COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and AtLee

TROY LEE BEASLEY

v.      Record No. 1634-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 1, 2023

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge Designate[1]

(Ronnie H. West; West Law Firm, PLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Rebecca M. Garcia, Assistant
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Lynchburg convicted Troy Beasley of

second-degree murder, aggravated malicious wounding, two counts of using a firearm in the

commission of a felony, maliciously shooting into an occupied vehicle, and maliciously shooting

into an occupied dwelling.  Beasley contends on appeal that the evidence was insufficient to prove

he possessed or fired a weapon for purposes of any of the six offenses.[2]  After examining the briefs

and record in this case, the panel unanimously holds that oral argument is unnecessary because "the

appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).  We affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1 413(A).

[1] Judge R. Edwin Burnette, Jr., presided over the jury trial.  Judge Mosby presided over
sentencing.

[2] Beasley's brief contains six assignments of error—one for each offense.  However,
because each assignment of error raises the same query, we consolidate them for purposes of
appeal and consider them as one.  The question is whether the evidence was sufficient to prove
that Beasley committed the crimes.

BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court." *Beasley v. Commonwealth*, 60 Va. App. 381, 391 (2012) (quoting *Riner v. Commonwealth*, 268 Va. 296, 330 (2004)).

On the night of April 28, 2018, Chenae Skinner and her two friends, Jennifer and Sandy, went to a 7-Eleven. Jennifer drove, and Chenae sat in the front passenger seat. Beasley was coming out of the store as they arrived. Chenae and Beasley were "really good friends." Chenae and her friends decided to join Beasley and followed him to Taylor and Eighteenth Streets. Jennifer parked her car in front of 1111 Eighteenth Street, and the women exited the vehicle. A small crowd of friends, including Troy Evans, was mingling on the street. When two cars tried to turn onto the street, Beasley confronted the drivers and told them to leave because it was "his block." After a heated exchange, the cars "backed up and went around." Chenae heard Beasley tell Troy to "get my strap." Chenae knew that "strap" was slang for a gun.

Chenae felt uncomfortable and decided to leave. As Beasley walked down Eighteenth Street toward Taylor Street, Chenae and her friends entered the car. Moments later, as Chenae spoke with Andra Watson through the open car window, she heard gunshots. Chenae saw the shooter standing near Taylor Street. Although she could not make out his face, she saw that the shooter was wearing a gold and black shirt, which was what Beasley was wearing that night. When Chenae heard the gunshots, she turned to look and "that's when [she] felt a lot of blood gushing from [her] head." Chenae slumped over in the car and told Jennifer that she had been hit. The bullet travelled along her eye wall and lodged near her eye. She suffered permanent blindness from the injury.

Jennifer likewise became uncomfortable when Beasley began yelling at "[n]obody in general" and using profanity. She decided to leave with Chenae and Sandy when she heard Beasley

yelling out to "go get my gat," which Jennifer knew meant "go get my gun." Beasley walked toward Taylor Street as Jennifer, Chenae, and Sandy got in the car and started to pull off. Jennifer then pulled back over to the side of the road so Chenae could speak to Andra. Jennifer heard what sounded like fireworks as a bullet came through the windshield and struck Chenae. Jennifer did not see who fired the shots.

Andra's brother, Jason Watson, was among the group of friends mingling on Eighteenth Street. Jason was in the house when Beasley arrived. Jason stepped out onto the front porch and noticed that Beasley was "aggravated" and seemed mad. Jason observed the interaction between Beasley and the drivers who tried to turn down the street and corroborated Chenae's description of the events. Jason heard Beasley say repeatedly that he was going to get his gun. Two minutes later Beasley walked down Eighteenth Street towards Taylor Street. Seconds later, Jason heard gunshots coming from the direction of Taylor Street. Jason ducked to avoid the shots and then saw Andra laying on the ground. Andra was shot in the head and later died from his injuries. Within a minute, Beasley returned and was hollering "why he won't on the porch, why the F he won't on the porch, he should have been on the porch." Jason did not see who fired the gun that killed his brother.

Lynchburg Police Officer Collins was dispatched to the scene. When she arrived, she approached Beasley and Jason who were in a heated discussion. Beasley denied knowing who shot Andra and suggested that the officer check him for gunpowder residue. Beasley voluntarily went to the police station with Officer Collins for the test. While at the station, Beasley went to the bathroom twice to wash his hands while waiting for other officers to arrive to perform the test.

Lynchburg Police Detective Dubie responded to the police station and performed the gunshot reside test. Beasley told Detective Dubie that he did not handle a firearm that night. Detective Dubie also went to the crime scene and recovered eight nine-millimeter Hornaday luger cartridge casings near the intersection of Eighteenth and Taylor Streets, approximately twenty-five

to thirty feet away from where Beasley initially said he was standing. No firearm was ever recovered. Detective Dubie testified that Beasley initially indicated he is left-handed, but in a subsequent interview said he is right-handed. After Detective Dubie mentioned that the shell casings were found in the same location where Beasley said he had been standing at the time of the shooting, Beasley changed his story and stated that he was actually further down the street on Spencer Place.

Lynchburg Police Investigator Olsson collected bullet fragments recovered from Chenae at the hospital and from Andra during his autopsy. He also recovered the bullets from inside a nearby house. The bullets recovered from the house were consistent with the bullet fragment recovered from Chenae. Investigator Olsson took measurements from the area where the casings were found on the corner of Eighteenth and Taylor Streets to where Andra's body was discovered. The distance was two hundred and thirteen feet.

Forensic Scientist Douglas DeGaetano testified as an expert in gunshot, also known as primer, residue. DeGaetano received the gunshot residue test performed on Beasley and analyzed it. DeGaetano located "two particles that were characteristic of primer residue on [Beasley's] left hand and another particle that was what we call consistent with . . . primer residue" also on the left hand. DeGaetano testified that residue might remain on one's hand even after washing if the hand is not washed thoroughly. He stated that residue might result from firing a weapon or by being in proximity of a weapon when fired. When Detective Dubie confronted Beasley about the gunshot residue, Beasley said, "you're right . . . pack that shit up and take me to jail."

After the Commonwealth rested, Beasley made a motion to strike, arguing that the evidence failed to prove the element of malice. The circuit court denied the motion to strike.

Derrick Jones testified on Beasley's behalf. Jones stated that after Beasley told the drivers of two vehicles that they could not drive down Eighteenth Street, he saw another car driving down

the street toward where they were standing talking with Chenae. He saw and heard gunfire coming from down the street. When asked if the gunfire was coming from the car, Jones responded, "No. A car stopped, lights went out, and then gunfire." He then clarified, "I'm saying the car that came up the hill that [the] lights went out -- when the lights -- headlights went out . . . on both sides gunfire was coming up." Jones could not identify the make or model of the vehicle or remember how many gunshots he heard, nor could he give any identifying characteristics of the unknown number of people riding inside.

Following closing arguments and before the jury was excused to deliberate, defense counsel renewed his motion to strike "for the reasons previously stated." The circuit court denied the motion. The jury found Beasley guilty as charged. After trial, Beasley filed a written motion to set aside the verdict in which he argued that the evidence presented at trial did not prove his identity as the shooter. After a hearing, the circuit court denied Beasley's motion to set aside the verdict. Beasley noted this appeal.

ANALYSIS

Beasley asserts that the evidence was insufficient to support his convictions. He argues that "nothing other than conjecture, poor memory, and assumptions point to [him] as being the shooter" and asserts the evidence "completely failed to provide a sufficient basis upon which a trier of fact could conclude beyond a reasonable doubt" that he committed the offenses.

We do not reach the merits of Beasley's argument because Rule 5A:20(e) "requires an appellant's opening brief to contain the standard of review and the argument, including applicable principles of law and authorities, in support of each of his assignments of error; unsupported assertions of error do not merit appellate consideration." *Winters v. Winters*, 73 Va. App. 581, 597 (2021). "When a party believes the circuit court erred, it is the duty of that party 'to present that error to us with legal authority to support their contention.'" *Coe v. Coe*,

66 Va. App. 457, 470 (2016) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)).  If the appellant fails to do so and that failure is significant, we consider the issue waived.  *Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018).

Here, Beasley's argument does not comply with Rule 5A:20(e).  He cites a single legal authority for the standard of review, but he does not cite any legal authority to support the merits of his argument.  "At the risk of stating the obvious, the Rules of the Supreme Court are rules and not suggestions; we expect litigants before this Court to abide by them."  *Coward*, 295 Va. at 367 (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017)).  Here, Beasley's assignments of error are waived because he failed to meet Rule 5A:20(e)'s requirements.

CONCLUSION

For the foregoing reason, we affirm the decision of the circuit court.

*Affirmed.*